UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **NSTI, LLC d/b/a TechConnect,** | § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-03854 |
| **Defense Energy Center of Excellence d/b/a/ National Security Technology Accelerator; and Nation Security Technology Accelerator,** | § § § § | |
| Defendant. | | |

## MEMORANDUM AND ORDER

Plaintiff NSTI, LLC ("Plaintiff" or "TechConnect") filed a breach of contract suit against Defendant Defense Energy Center of Excellence d/b/a National Security Technology Accelerator ("NSTXL") in Texas state court. Plaintiff later added National Security Technology Accelerator ("NSTXL-2")[1] as a defendant, alleging that NSTXL-2 is the alter ego of NSTXL and is therefore liable for NSTXL's breach. With NSTXL's consent, NSTXL-2 then removed the case to federal court asserting federal officer removal under 28 U.S.C. § 1442(a)(1). (Doc. 1).

Before the Court is Plaintiff's Motion to Remand. (Doc. 6). A hearing was held on the Motion to Remand on February 14, 2020. (Minute Entry 2/14/20). After considering the motion, the response and reply thereto, the parties' arguments at the hearing and supplemental briefing, and all applicable law, the Court determines that Plaintiff's Motion to Remand must be granted.

**I.    Background**

Congress has granted the Department of Defense ("DOD") authority to enter into Other Transactions ("OT") under certain circumstances. 10 U.S.C. §§ 2371(a), 2371b(a). "Other

---

[1] The Court adopts Plaintiff's convention of referring to this corporation as "NSTXL-2." By doing so, the Court expresses no stance on whether NSTXL-2 is the alter ego of NSTXL.

1

Transactions are legally binding contracts that are generally exempt from federal procurement laws and regulations," and that DOD typically uses to conduct research or develop prototypes. MOSHE SCHWARTZ & HEIDI M. PETERS, CONG. RESEARCH SERV., DEPARTMENT OF DEFENSE USE OF OTHER TRANSACTION AUTHORITY 2 (2019). "One common application of OTs is to forge an agreement with a consortium." *Id.* "A consortium is an organized group" that may "consist of nonprofits, academic institutions, or contractors" and that "focus[es] on a specific technology area" that the government has identified. *Id.* Generally, a lead entity—the consortium manager—coordinates and directs a consortium's activities. *Id.* The consortium manager publicizes the DOD's technology needs, identifies contractors that can provide the technology, enters into contracts on behalf of the DOD with the end contractors with Government approval, and manages those contracts. (Doc. 8 at 1–2 and Exhibit 1). The consortium manager is generally paid a management fee equivalent to a percentage of the money that goes on contract under the OT and in certain cases, a small upfront fee. (Doc. 8 at 2 and Exhibit 1).

Plaintiff TechConnect is a company that connects clients with technology innovators through "innovation challenges, conferences, innovation platform, journal, and other services." (AP at ¶ 5.1).[2] In April 2014, TechConnect's CEO and founder, Matt Laudon, along with Timothy Greeff and Joseph Kosper, created NSTXL, a Texas non-profit start-up. (AP at ¶ 6.2). NSTXL's business model is to obtain consortium management OT contracts with the DOD. (AP at ¶ 6.3).

In October 2014, TechConnect and NSTXL entered into a 20-year contract ("the Agreement"). (AP at ¶¶ 7.1–7.3). TechConnect agreed to host NSTXL's annual conference, serve as NSTXL's agent in agreements with the DOD, and use its database to help NSTXL identify

---

[2] AP stands for "Amended Petition." TechConnect's amended state court petition is included as Exhibit 11 to Defendants' Response to Plaintiff's Motion to Remand, which can be found at Docket Entry # 8, 4:19-cv-03854.

innovative technologies. (AP at ¶ 7.1). NSTXL in turn agreed to pay TechConnect a percentage of proceeds from DOD contracts. (AP at ¶ 7.4). NSTXL eventually secured two OT contracts from the DOD: a 3-year contract in 2015 and a 5-year contract in 2017 (the "DTIC Energy and TreX OTs"). (AP at ¶ 10.1–10.2).

On January 23, 2018, Laudon was removed from the NSTXL board by the other directors. (AP at ¶ 11.4). The next day, NSTXL served a letter on TechConnect purporting to terminate the Agreement. (AP at ¶ 11.4). The letter states that NSTXL seeks to terminate the Agreement because TechConnect had not arranged and hosted an annual event and had failed to provide certain database services under the Agreement. (AP at ¶ 11.5). TechConnect alleges these claims "have no basis and are simply a contrived effort to avoid paying TechConnect." (AP at ¶ 11.5).

On January 30, 2018, TechConnect filed suit in the 334th Judicial District Court of Harris County, alleging that NSTXL had breached the Agreement. *See NSTI, LLC v. Def. Energy Ctr. of Excellence v. Laudon*, Cause No. 2018-06530. NSTXL filed a counterclaim against TechConnect for fraudulent inducement and breach of contract, and a third-party complaint against Laudon for fraudulent inducement and breach of fiduciary duty. (Doc. 1 at ¶ 18).

Several months prior to commencement of the state court lawsuit, NSTXL had submitted a proposal to become the manager of the DOD's S2MARTS Consortium. (Doc. 5-1 at 133). The solicitation from the DOD for the S2MARTS OT stated that the DOD was looking for a "Consortium Manager (CM) that will run the day-to-day operations of the Consortium, solicit and sustain Consortium members, assist Consortium members with proposal preparation, and facilitate financial transactions[.]" (Doc. 5-1 at 25).

On April 26, 2018, the remaining NSTXL board members formed NSTXL-2, a North Carolina non-profit. (Doc. 6 at 8). On February 22, 2019, NSTXL-2 (rather than NSTXL) executed

the S2MARTS OT contract and became the S2MARTS consortium manager. (Doc. 1-4 at 306). Plaintiff alleges that the S2MARTS OT award was put in NSTXL-2's name in order to circumvent the Agreement with TechConnect. (AP at ¶ 16.5). Greeff, NSTXL's co-founder, provides a different explanation. According to Greeff, during negotiations on the S2MARTS OT contract, the DOD was concerned that NSTXL's ongoing management of two other OTs would make it difficult for the DOD to "sever" the S2MARTS OT from NSTXL, if the DOD ever became discontented with NSTXL's management of the S2MARTS OT. Greeff claims that he used NSTXL-2 (and not NSTXL) as the consortium manager of the S2MARTS OT in order to address these severability concerns. (Doc. 8-1, Greeff's Declaration at ¶¶ 27–28).

On September 3, 2019, TechConnect filed an amended petition in state court adding NSTXL-2 as a defendant on the theory that NSTXL-2 is the alter ego of NSTXL. (AP at ¶ 4.3). The amended petition brings a breach of contract claim against NSTXL-2 for NSTXL's breach of the Agreement. (AP at ¶ 20). TechConnect brings this claim under Texas Business Organizations Code § 21.223(b), which allows liability to be imposed under an alter-ego theory if the Plaintiff can demonstrate "(1) that the entity on which it seeks to impose liability is the alter ego of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit." *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 213–14 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citing Tex. Bus. Org. Code §21.223(b)). Specifically, TechConnect alleges that even though NSTXL-2 is not a party to the Agreement, NSTXL-2 can still be held liable for NSTXL's alleged breach of the Agreement because "NSTXL created NSTXL-2 and used the purported separateness of those entities for the purpose of perpetuating a fraud on TechConnect, primarily for the personal benefit of NSTXL." (AP at ¶¶ 20.4–20.5).

With the consent of NSTXL, NSTXL-2 removed this case to federal court by invoking federal officer removal under 28 U.S.C. § 1442(a)(1). (Doc. 1). TechConnect moves to remand the case, arguing that NSTXL-2 does not meet the conditions for federal officer removal. (Doc. 6). The Court determines that remand is required.

**II.     Discussion**

The federal officer removal statute allows for removal of an action "against or directed to . . . any person acting under [a federal] officer . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). "[T]o remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, No. 18-30652, 2020 WL 878930, at *7 (5th Cir. Feb. 24, 2020). A removing defendant need no longer show a "causal nexus" between plaintiff's claims and the act under color of federal office. *See Id.* at *7 (overruling *Bartel* and its progeny "to the extent that those cases erroneously relied on a 'causal nexus' test after Congress amended section 1442(a) to add 'relating to'"). "Subject to the other requirements of section 1442(a), any civil action that is connected or associated with an act under color of federal office may be removed." *Id.*

Because of the complex constellation of parties and claims in this case, the Court begins by carefully delineating the relevant threshold issue. Plaintiff initially sued only NSTXL for breach of the Agreement. NSTXL waived its right to remove, however, when it did not do so by March 5, 2018,[3] and then prosecuted counterclaims and third-party claims in state court. *See, e.g., Brown*

---

[3] NSTXL accepted service on February 2, 2018. The deadline to remove expired on March 5, 2018. 28 USC § 1446(b).

5

*v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986) (holding that a defendant waives its right to remove by invoking state-court processes). Plaintiff subsequently added NSTXL-2 as a defendant based on an alter ego theory of liability, but the only claims brought against NSTXL-2 are claims seeking to hold it responsible for NSTXL's alleged breaches. NSTXL-2 timely sought to avail itself of federal officer removal. Accordingly, the threshold issue in this case is whether any of Plaintiff's breach of contract claims (which are brought in the first instance against NSTXL, and against NSTXL-2 only as an alleged alter ego) relate to an act that NSTXL-2 took under color of federal office.[4] To answer this question, the Court first addresses the Fifth Circuit's law on the "acting under" requirement, and then turns to consider whether Plaintiff's suit relates to an act that NSTXL-2 took under color of federal office.

### A. "for or relating to any act under color of [federal] office"

A government contractor seeking to invoke federal officer removal must establish that the lawsuit relates to an "act under color of [federal] office." 28 U.S.C. § 1442(a)(1). "Although the words 'acting under' are undoubtedly broad, the Supreme Court has clarified that they 'must refer to . . . a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office.'" *See Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017) (quoting *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007)).[5] "This relationship typically involves 'subjection, guidance, or control.'" *Id.* (citing *Watson*, 551 U.S. at 151). "[T]he private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or

---

[4] At times, Defendants argue that federal officer removal may also be based on acts taken by NSTXL. The Court rejects this argument. NSTXL has waived its right to removal and the Court is aware of no authority allowing a timely removing party to rely on a co-defendant's or third party's conduct and status to invoke 28 U.S.C. § 1442(a).

[5] *Latiolais* overruled *Zeringue* only to "the extent [it] erroneously relied on a 'causal nexus' test." *Latiolais*, 2020 WL 878930, at *7. *Zeringue*'s "acting under" analysis is therefore still good law.

6

tasks of the federal superior." *Watson*, 551 U.S. at 153. That is, the action must be "pursuant to a federal officer's directions." *Latiolais*, 2020 WL 878930, at *7.

The Fifth Circuit has had multiple occasions to consider the removal statute's "acting under" requirement. In the following three cases, the Court found the requirement satisfied.

In *Zeringue*, the Fifth Circuit considered whether federal officer removal was available to a company that had contracted to provide parts to the Navy and was being sued for allegedly exposing individuals to asbestos in those parts. 846 F.3d at 792. The Court held that the contractor's "provision of parts in an effort to assist the Navy's construction of vessels satisfies the 'acting under' requirement" because "the Navy directed [the contractor] to build parts, and, had [the contractor] not done so, the Navy would have had to build those parts instead." *Id.* at 792; *see also Latiolais*, 2020 WL 878930, at *2 (holding that Defendant's federal ship repair contract with the Navy establishes that Defendant acted pursuant to a federal officer's directions).

In *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 416–17 (5th Cir. 2001), the Fifth Circuit considered whether federal officer removal was available to chemical companies that had contracted to produce Agent Orange for the government during the Vietnam War, and that were being sued by civilians who had been exposed to Agent Orange. The Court held that defendants "were acting under color of federal authority" when they produced Agent Orange because the government exercised "strict control over the development and subsequent production of Agent Orange" and because "[t]he government specifically asked the defendants to produce Agent Orange," using a certain chemical composition. *Id.* at 418.

In *St. Charles Surgical Hospital, L.L.C. v. Louisiana Health Service & Indemnity. Co.*, 935 F.3d 352, 355 (5th Cir. 2019), the Court considered whether an insurance company that had contracted with the federal government's Office of Personnel Management ("OPM") to provide

insurance benefits to federal employees could invoke federal officer removal where the company was being sued for distributing benefits in a manner that violated state law. The Court held that the insurance company was "acting under" the OPM when it made the payments because OPM "enjoys a strong level of guidance and control" over the company insofar as the company is "subject to OPM oversight, uniquely operates with the United States Treasury, submits to OPM's regulatory requirements, and ultimately answers to federal officers." *Id.* at 356.

In each case, the contractor was facing a lawsuit related to an act it took while fulfilling its contractual obligation to assist the government in carrying out its duties. It is in this sense that the contractors were "acting under" a federal officer, or "pursuant to a federal officer's directions." The Court turns to apply this "acting under" standard to NSTXL-2.

### B. Plaintiff's claims do not relate to an act NSTXL-2 took under color of federal office

NSTXL-2 argues that federal officer removal is appropriate because NSTXL-2 "is being sued, inter alia, over the fact that it was formed as a separate entity, under Plaintiff's alter ego claims." (Doc. 1 at ¶ 5). In particular, NSTXL-2 argues that both its formation and its signing of the S2MARTS OT were acts under color of federal office because both were "due to the DOD practice of requiring a separate, nonprofit entity for each OTA consortium manager." (Doc. 1 at ¶ 5). However, neither act can be properly described as an act under color of federal office.

NSTXL-2 has not established that its incorporation was an act under color of federal office. As a preliminary matter, it is not even clear that NSTXL-2's incorporation can be coherently described as an act that NSTXL-2 took. The bigger problem, however, is that Defendants have not shown that the DOD has an established practice of requiring that each OT be managed by a distinct consortium manager. Indeed, NSTXL itself is a manager for two separate OT consortia. What actually appears to have occurred in this case—as Defendants describe in their Response brief—

8

is that the government "requested during the negotiations (along with certain other changes) that it wanted a distinct entity to be the consortium manager for the S2MARTS OTA," because of severability concerns, and that NSTXL accommodated the request. (Doc. 8 at 11). Accommodating a governmental preference in pre-contractual negotiations is not the same as acting "pursuant to a federal officer's directions." *Latiolais*, 2020 WL 878930, at *7.

Nor was NSTXL-2's signing of the S2MARTS OT an action pursuant to a federal officer's directions. Signing the OT made NSTXL-2 the consortium manager; it is not an act NSTXL-2 took pursuant to its duties as consortium manager. Those duties instead involve acts such as creating a marketing plan, recruiting performers, reviewing proposals, drafting agreements, and overseeing projects. (Doc. 8 at 19–21). If NSTXL-2 were facing a lawsuit related to an exercise of those duties, this case would be analogous to *Zeringue*, *Miller*, and *St. Charles Surgical Hospital*. Instead, however, Plaintiff's claims relate solely to acts taken before and/or outside of NSTXL-2's duties as consortium manager. Defendants have identified no case in which a court has held that federal officer removal is appropriate based only on such pre-contractual or extra-contractual acts. Given the holdings of *Zeringue*, *Miller*, and *St. Charles Surgical Hospital*, the Court is persuaded there is good reason for this absence.

In sum, the Court determines that NSTXL-2 has not established that the lawsuit against it relates to an act it took under color of federal office. NSTXL-2 has taken actions under color of federal office as the S2MARTS consortium manager. But the lawsuit against NSTXL and NSTXL-2 is not connected to those actions. To the extent this lawsuit even relates to acts taken by NSTXL-2, they are acts that occurred before NSTXL-2 became consortium manager, and that were not performed at the direction of a federal officer. Federal removal is thus unavailable. Accordingly, the Court need not further consider whether NSTXL-2 has asserted a colorable federal defense.

**III.     Conclusion**

Defendant NSTXL-2 has not established that the claims against it relate to acts it took under color of federal office. Federal officer removal is therefore unavailable.

Plaintiff's Motion to Remand (Doc. 6) is **GRANTED**. Plaintiff's request for attorneys' fees pursuant to 28 U.S.C. § 1447(c) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, this the 17th day of March 2020.

                                                    _____
                                                    KEITH P. ELLISON
                                                    UNITED STATES DISTRICT JUDGE